UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KENYA F. [1],                                      )
                                                   )
                    Plaintiff,                     )
                                                   )
            v.                                     )        No. 1:20-cv-02193-DLP-TWP
                                                   )
KILOLO KIJAKAZI,                                   )
                                                   )
                    Defendant.                     )

## ORDER

Plaintiff Kenya F. requests judicial review of the denial by the Commissioner

of the Social Security Administration ("Commissioner") of her application for

Supplemental Security Income ("SSI") benefits under Title XVI of the Social

Security Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, this

Court hereby **REVERSES** the ALJ's decision denying the Plaintiff's claims on

redetermination and **REMANDS** this matter for further consideration.

## I.   PROCEDURAL HISTORY

Kenya is an individual who received supplemental security income benefits

as a child having been found disabled by an ALJ in 2012 due to diabetes insipidus.

(Dkt. 17-3 at 9-10, R. 126-27). As required by law, Plaintiff's eligibility for disability

benefits was redetermined under the rules for determining disability in adults when

Kenya attained age eighteen. On June 29, 2016, the Social Security Administration

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern
District of Indiana has adopted the recommendations put forth by the Court Administration and
Case Management Committee of the Administrative Office of the United States Courts regarding the
practice of using only the first name and last initial of any non-government parties in Social Security
opinions. The Undersigned has elected to implement that practice in this Order.

determined that Kenya was no longer disabled, with eligibility for benefits to terminate as of August 31, 2016. (Dkt. 17-3 at 11-13, R. 128-30; Dkt. 17-4 at 2-5, R. 131-34). On July 8, 2016, Kenya's mother requested reconsideration of the disability benefits cessation. (Dkt. 17-4 at 6-8, R. 135-37). The determination was upheld upon reconsideration after a disability hearing on February 10, 2017 by a Disability Hearing Officer. (Dkt. 17-4 at 22-45, R. 151-74). Thereafter, Kenya filed a written request for a hearing before an administrative law judge, which was granted. (Dkt. 17-4 at 50-52, R. 179-81).

On June 4, 2019, Administrative Law Judge ("ALJ") Gladys Whitfield conducted a hearing,[2] where Kenya and medical expert Dr. Lee A. Fischer appeared in person, and medical expert Dr. Lawrence A. Schaffzin and vocational expert Ms. Celena Earl appeared telephonically. (Dkt. 17-2 at 32-70, R. 31-69). On June 20, 2019, ALJ Whitfield issued an unfavorable decision finding that Kenya's disability ended on June 29, 2016, and that she has not become disabled again since that date. (Dkt. 17-2 at 11-22, R. 10-21). Kenya appealed the ALJ's decision, and on June 16, 2020, the Appeals Council denied Kenya's request for review, making the ALJ's decision final. (Dkt. 17-2 at 2, R. 1). Kenya now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[2] Two separate hearings were held before ALJ Whitfield on October 19, 2018 and June 4, 2019. Plaintiff personally appeared at the October hearing and requested to postpone it so that she could obtain representation. (Dkt. 17-2 at 78-80, R. 77-79). The ALJ granted Kenya's request and rescheduled the hearing. (Id.).

## II.  STANDARD OF REVIEW

Section 1614(a)(3)(H) of the Social Security Act ("the Act") provides that individuals who receive SSI as children must have their disability redetermined upon attaining the age of eighteen. This redetermination process is guided by the rules for determining disability in adults.

To qualify for disability as an adult, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[3] The ALJ must consider whether:

> (1) the claimant is presently [un]employed;[4] (2) the claimant has a severe impairment or combination of impairments; (3) the

---

[3] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to supplemental security income benefits. Often, as is the case here, the parallel section pertaining to the other type of benefits—in this case disability insurance benefits—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a).

[4] This step is not used for redetermining disability at age eighteen. 20 C.F. R. § 416.987(b).

3

> claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. (A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Kenya is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this

substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III.  BACKGROUND

### A. Factual Background

Kenya graduated from high school in June 2015. (Dkt. 17-6 at 13, R. 282). On June 29, 2016, the Social Security Administration determined that Kenya was no longer disabled. (Dkt. 17-3 at 11, R. 128). At the disability hearing, on June 4, 2019,

Kenya testified that she was scheduled to start classes online with Purdue at the end of July 2019. (Dkt. 17-2 at 63, R. 62). Kenya has never worked. (Dkt. 17-6 at 12, R. 281).

## B. ALJ Decision

In determining whether Kenya qualified as an adult for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) and concluded that Kenya's disability ended on June 29, 2016. (Dkt. 17-2 at 21, R. 20). At Step One, the ALJ properly noted that this portion of the sequential evaluation process is not utilized for redetermining disability at age eighteen. 20 C.F.R. § 416.987(b); (Dkt. 17-2 at 12, R. 11).

At Step Two, the ALJ found that Kenya has severe impairments of asthma, bicentral visual field deficit, and limited field of vision. (Dkt. 17-2 at 13, R. 12). The ALJ also found non-severe impairments of adrenal insufficiency, hypothyroidism, panhypopituitarism, optic atrophy, migraine headaches, sinusitis, diabetes insipidus, urinary frequency, depression, and anxiety. (Dkt. 17-2 at 13-14, R. 12-13).

At Step Three, the ALJ found that Kenya's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§§ 416.920(d), 415.925, and 416.926, considering Listings 2.02, 2.03, and 2.04 for Kenya's vision loss and Listing 3.03 for her asthma. (Dkt. 17-2 at 15, R. 14).

After Step Three but before Step Four, the ALJ found that Kenya had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.927(b), with the following exertional limitations: no climbing of ladders, ropes,

or scaffolds; occasional climbing of ramps and stairs; occasional exposure to extreme heat and cold, environmental irritants, and poorly ventilated areas; no work around hazardous moving machinery or unprotected heights; no driving at work; no fast paced, tandem tasks or teamwork; and work involving no more than simple instructions. (Dkt. 17-2 at 16, R. 15).

At Step Four, the ALJ concluded that Kenya had no past relevant work. (Dkt. 17-2 at 20, R. 19).

At Step Five, relying on the vocational expert's testimony and medical expert's testimony, the ALJ determined that, considering Kenya's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Kenya could perform. (Dkt. 17-2 at 20, R. 19). The ALJ thus concluded that Kenya was no longer disabled under the Social Security Act. (Dkt. 17-2 at 20, R. 19).

## IV. ANALYSIS

In support of her request for reversal of the ALJ's decision, Kenya argues that the ALJ inappropriately discounted the opinions of Dr. Dennis Grewal, her treating physician, and Dr. Diane Elrod, a state agency consultative examiner. The Commissioner maintains that the ALJ provided sufficient justification to discount these opinions. The Court will address each argument in turn.

### A. Weight Given to Treating Physician

Kenya maintains that the ALJ erred in failing to explain why she did not give controlling weight to Dr. Grewal's April 2019 opinion. (Dkt. 28 at 17). Kenya

contends that the ALJ erred by failing to adequately explain her reasons for finding that Dr. Grewal's opinion was inconsistent with the record evidence. (Dkt. 28 at 16-17). Kenya also asserts that the ALJ's use of one of the independent medical expert's opinion "as a singular basis" for discounting Dr. Grewal's opinion contravenes Agency rules. (Id. at 16). Lastly, Kenya maintains that the ALJ had a duty to solicit additional information to flesh out Dr. Grewal's allegedly vague opinion. (Dkt. 28 at 17-18). Conversely, the Commissioner argues that the ALJ appropriately discounted the opinion of Dr. Grewal and provided sufficient reasons for doing so. (Dkt. 30 at 9).

In this case, on April 4, 2019, Dr. Dennis Grewal, who has treated Kenya since September 2016, completed a physical residual functional capacity questionnaire for her. (Dkt. 17-8 at 194, R. 976). Dr. Grewal listed Kenya's diagnoses as panhypopituitarism, diabetes insipidus, and migraines. (Id.). The clinical findings and objective signs that Dr. Grewal relied on was Kenya's 2010 transsphenoidal resection procedure to remove a craniopharyngioma (a benign tumor of the pituitary gland). (Id.). Dr. Grewal opined that Kenya: can sit for more than 2 hours and 45 minutes before needing to get up; can stand 45 minutes at one time before needing to sit down; can only sit or stand/walk for about 4 hours in an eight hour workday; needs to walk around every 30 minutes for seven minutes each time; can frequently lift less than ten pounds and rarely lift 10 to 20 pounds; can occasionally twist, stoop, or crouch; rarely climb ladders or stairs; is capable of moderate to low stress jobs; has no limitations with reaching, handling, or

fingering; her impairments will not likely produce "good days and "bad days;" and she would likely be absent from work one day per month as a result of her impairments. (Dkt. 17-2 at 19; Dkt. 17-8 at 194-197, R. 976-979).

In her opinion, the ALJ gave great weight to the independent medical experts' opinions, some weight to the state agency consultants' opinions, and only little weight to the opinion of Dr. Grewal, Kenya's treating physician. (Dkt. 17-2 at 19-20, R. 18-19). In discounting Dr. Grewal's opinion, the ALJ explained that: (1) Dr. Grewal failed to give any "rationale or basis for the limitations" in the questionnaire; (2) his opinion was unsupported by substantial evidence; (3) his own treatment notes did not support his functional limitations on sitting, standing, walking, or lifting; and (4) his limitations of unscheduled breaks was vague and unsupported. (Id.). The ALJ also noted that Dr. Fischer, a medical expert who testified at the disability hearing, agreed that the medical evidence did not support Dr. Grewal's limitations. (Dkt. 17-2 at 20, R. 19).

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *Esquibel v. Berryhill*, No. 1:18-CV-159-JPK, 2019 WL 1594339, at *3 (N.D. Ind. Apr. 15, 2019). *See also* 20 C.F.R. § 416.927(c). Medical opinions are weighed by considering the following factors: (1) whether there is an examining relationship; (2) whether there is a treatment relationship, and if so the length of the treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence and by explanations from the source; (4) the

consistency of the opinion with the record as a whole; (5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)–(6).

An ALJ gives a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 416.927(c)(2); 404.1527(c)(2); *see also Kaminski v. Berryhill*, 894 F.3d 870, 874 n.1 (7th Cir. 2018) (for claims filed before March 27, 2017, an ALJ "should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence."). An ALJ must "offer good reasons for discounting a treating physician's opinion." *Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). So long as the factors are considered, the ALJ need not explicitly address each factor. *Ray v. Saul*, No. 20-2802, 2021 WL 2710377, at *3 (7th Cir. 2021) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)); *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) ("[W]hile the ALJ did not explicitly weigh each factor in discussing Dr. Belford's opinion, his decision

11

makes clear that he was aware of and considered many of the factors, including Dr. Belford's treatment relationship with Schreiber, the consistency of her opinion with the record as a whole, and the supportability of her opinion."); *Cf. Shattuck v. Berryhill,* No. 1:17-cv-03978-TAB-JMS, 2018 WL 2752565, at *3 (S.D. Ind. June 8, 2018) ("While the Deputy Commissioner is correct that the ALJ may not have to explicitly weigh every factor, the ALJ must still provide a logical bridge when rejecting a treating physician's opinion."). If after considering these factors, the ALJ discounts the treating physician's opinion, the Court must allow that decision to stand so long as the ALJ minimally articulated her reasons. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quotations omitted).

Here, the ALJ gave little weight to Dr. Grewal's opinion, instead adopting the functional limitations of the independent medical experts. The ALJ was entitled to give limited weight to Dr. Grewal's opinion on the bases of limited supportability and vagueness. The ALJ's first rationale for discounting Dr. Grewal's opinion is well supported. As the ALJ noted, Dr. Grewal's RFC assessment contains "no rationale or basis for the limitations" he assessed. (Dkt. 17-2 at 20, R. 19; Dkt. 17-8 at 195-197, R. 977-79). Dr. Grewal's questionnaire contains limited references to the diagnoses or medical records that he relied on in making his conclusions. (Dkt. 17-8 at 194, R. 976). "A check-box form, unexplained, is generally weak evidence, taking on greater significance only when it is supported by medical records." *Gwendolyn P. v. Kijakazi*, No. 20 C 3339, 2021 WL 5204858, at *7 (N.D. Ill. Nov. 9, 2021) (citing *Winkelman v. Saul*, 835 F. App'x 889, 892 (7th Cir. 2021)(internal citations

omitted)); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R.§ 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion…the more weight we will give that opinion.").

Second, as the ALJ pointed out, Dr. Grewal's own treatment notes do not reveal significant findings or symptoms. *See Denton v. Astrue*, 596 F.3d 416, 424 (7th Cir. 2010) (An ALJ may give less weight to an opinion that is unsupported by objective evidence.). Dr. Grewal's treatment notes from September 9, 2016 show that Kenya reported knee pain, but on physical examination, Dr. Grewal found her extremities were normal. (Dkt. 17-7 at 298-02, R. 654-58). Dr. Grewal noted that during her October 17, 2016 visit, Kenya had not reported any fatigue; urgency, frequency, or incontinence with her genitourinary system; or musculoskeletal pain, joint swelling, or arthritis. (Dkt. 17-7 at 309-311, R. 665-67). Additionally, Dr. Grewal noted normal findings on physical examination. (Id.). On January 17, 2017, Kenya saw Dr. Grewal again reporting depression, excessive urination at night, and post-nasal drip. (Dkt. 17-7 at 303-06, R. 659-62). Dr. Grewal noted, however, normal findings on physical examination. (Id.). Kenya saw Dr. Grewal again in March, June, and September 2017 as well as March 2018. (Dkt. 17-7 at 392-405, R. 748-761). During all four of these visits, Dr. Grewal's findings on physical examination were normal. (Id.).

When reviewing the treatment record, the Court found additional medical evidence contradicting the findings of Dr. Grewal. There are multiple references by various medical examiners finding normal physical examinations, including normal

13

gross movement, strength in all extremities, and ambulating within normal limits. (Dkt. 17-7 at 55, 95, 176-84, 362, R. 411, 451, 532-40, 718; Dkt. 17-8 at 44-63, 165-77, R. 826-45, 947-59). The medical records also indicate that Kenya's excessive urination was stable during the day. (Dkt. 17-7 at 62-64, 291-306, 309-11, 384-87, R. 418-20, 647-662, 665-67, 740-43).

While Kenya complained of fatigue and headaches to Dr. Grewal, (Dkt. 17-7 at 62-64, 176-80, 240-43, 291-306, 309-11, 381-83, R. 418-20, 532-36, 596-99, 647-62, 665-67, 737-39; Dkt. 17-8 at 44-63, R. 826-45), there is nothing in the treatment notes to suggest that these symptoms rendered her unable to function. Throughout the treatment record, Kenya represented at different medical visits, including, on February 18, 2016, August 25, 2016, September 9, 2016, October 17, 2016, June 8, 2017, November 4, 2017, and October 19, 2018, that she was not experiencing headaches or fatigue. (Dkt. 17-7 at 42, 181, 299, 309, R. 398, 537, 655, 665; Dkt. 17-8 at 68, 92, 110, R. 850, 874, 892). While Kenya did report experiencing occasional headaches at a medical visit in April 2018, Kenya explained that these headaches were relieved with over-the-counter Advil. (Dkt. 17-8 at 18, R. 800). Also, from 2016 through 2018, various providers found that Kenya's central adrenal insufficiency, which can cause fatigue, was well-controlled and noted it "resolved." (Dkt. 17-7 at 65-68, 176-78, 181-82, 240-43, 334-36, 368-72, 417-19, R. 421-24, 532-34, 537-38,

596-99, 690-92, 724-28, 773-75; Dkt. 17-8 at 18-21, 44-48, 60-63, 169-72, R. 800-03, 826-30, 842-845, 951-54).[5]

Lastly, while Dr. Grewal opined that Kenya's impairments would cause her to miss at least one day of work per month, he did not point to any clinical findings or evidence that supports this conclusion. Thus, the ALJ reasonably rejected this unsupported limitation. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (finding that the ALJ reasonably discounted the treating physician's opinion about claimant missing a week or more of work a month where the treating physician "did not explain his opinion and his treatment notes do not clarify the doctor's reasoning.").

Once well-supported contradicting evidence is introduced, a treating physician's opinion is no longer entitled to controlling weight; rather, it becomes "just one more piece of evidence for the administrative law judge to weigh." *Newman v. Colvin*, 211 F. Supp. 3d 1126, 1129 (N.D. Ind. 2016) (quoting *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008)).

In discounting Dr. Grewal's opinion, the ALJ placed significance on the medical opinions of Drs. Schaffzin and Fischer. At the disability hearing, Dr. Schaffzin, a board-certified ophthalmologist, testified based on his examination of the medical evidence of record. (Dkt. 17-2 at 38, R. 37). Dr. Schaffzin concluded

---

[5] In her reply, Plaintiff points to a May 2017 MRI that "demonstrated that a stellar lesion had increased in size, which can be associated with headaches." (Dkt. 32 at 3). However, that record states that there was no overall change in lesion size; rather, imaging showed a "mild increase in size of central T2 hypointensity and subtle enhancement of known sellar lesion." (Dkt. 17-7 at 363, R. 719).

based on his review of the medical evidence, Kenya had severe medically determinable impairments of bitemporal visual field defect, secondary to craniopharyngioma, as well as mild optic atrophy, and there was no chance of these impairments improving. (Dkt. 17-2 at 39-43, R. 38-42). Dr. Schaffzin did note, however, that Kenya's conditions would remain stable. (Dkt. 17-2 at 39-43, R. 38-42). Dr. Schaffzin opined that Kenya had a functional limitation in regards to her field of vision in her right eye. (Id. at 40-41, R. 39-40). Dr. Schaffzin found that based on Kenya's impairments, she should never climb ladders, ropes, or scaffolds; avoid concentrated exposure to hazards such as heights and dangerous machinery; and avoid normal workplace hazards. (Id. at 41-42, R. 40-41). Dr. Schaffzin also opined that Kenya would have no limitations with reading or using a computer. (Id. at 42, R. 41).

When questioned about visual consultative examiner Ashley Cox's opinion that Kenya's navigation is limited due to her acquired temporal visual field loss, Dr. Schaffzin testified that he did not believe navigation to be an issue. Dr. Schaffzin explained that Dr. Cox's June 20, 2016 opinion rested on a higher level of false negative errors, which could have resulted from Kenya not having her corrective lenses. (Dkt. 17-2 at 44-45, R. 43-44; Dkt. 17-7 at 120-24, R. 476-80). Dr. Schaffzin found the results from Kenya's July 2016 visual field testing conducted by Dr. Jennifer Eikenberry, an ophthalmologist, to be more credible. In that test, Dr. Schaffzin explained that Kenya had acquired corrective lenses, and the testing was more accurate as was demonstrated by fewer false negative errors. (Dkt. 17-2 at 44-

16

45, R. 43-44; Dkt. 17-7 at 190-95, 207-09, R. 546-51, 563-65). Thus, Dr. Schaffzin opined that the tempo defect in Kenya's eyes were not significant enough to limit navigation, (Dkt. 17-2 at 45, R. 44), and discounted Dr. Cox's opinion that Kenya's navigation was limited.

Next, the ALJ called Dr. Lee A. Fischer, a family medicine specialist, who also offered testimony based on his review of Kenya's medical record. (Dkt. 17-2 at 46, R. 45). Dr. Fischer testified that Kenya had medically determinable impairments of surgery for a craniopharyngioma, adrenal insufficiency, hypothyroidism, hypopituitarism, diabetes insipidus, headaches, and asthma. (Dkt. 17-2 at 46, R. 45). Reviewing Kenya's impairments, Dr. Fischer opined that Kenya was capable of light work, which would entail lifting up to 20 pounds occasionally; lifting or carrying up to 10 pounds frequently; and standing and/or walking for six hours and sitting for up to six hours in an eight-hour workday with normal breaks. (Id. at 52, R. 51). Dr. Fischer testified that Kenya could never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; and frequently balance, stoop, kneel, crouch, and crawl. (Dkt. 17-2 at 52, R. 51). Dr. Fischer also found Kenya had no manipulation limitations but should avoid concentrated exposure to extreme cold, heat, fumes, dust, gases, and poor ventilation; and should never be on unprotected heights or around unprotected hazardous machinery or parts. (Id. at 52-53, R. 51-52).

When questioned regarding Dr. Grewal's report, Dr. Fischer opined that he did not see any evidence supporting the conclusion that Kenya would need to walk

around every 30 minutes for seven minutes each time; that she could only sit or stand for 45 minutes at a time; or that she was limited to frequently lifting less than 10 pounds. (Dkt. 17-2 at 57-59, R. 56-58). Dr. Fischer opined that while Kenya's physical impairments will not necessarily improve, they were all stable with medication. (Dkt. 17-2 at 59, R. 58).

The ALJ afforded the independent medical expert opinions of Dr. Schaffzin and Dr. Fischer great weight noting their relevant specialties, their opportunity to review the entire record, and their experience in Social Security disability evaluations. (Dkt. 17-2 at 19, R. 18). The ALJ further found, elsewhere in the opinion, that Kenya's daily activities failed to suggest greater limitations than those included in the RFC, noting that Kenya is able to cook, clean, and shop; function independently; provide personal care; and take care of her own basic needs. (Dkt. 17-2 at 18, R. 17).

Contrary to Kenya's argument, the ALJ did minimally articulate her reasons for assigning little weight to Dr. Grewal's opinion. The ALJ explicitly noted that Dr. Grewal was Kenya's primary care physician. (Dkt. 17-2 at 19, R. 18). She also considered the consistency and supportability of Dr. Grewal's opinion with the record, the findings of the independent medical experts, Kenya's activities of daily living, and the treatment record.

Kenya also includes in her argument the contention that the ALJ had a duty to solicit additional information to "flesh out" any vague aspects of Dr. Grewal's opinion. (Dkt. 28 at 17-18). Social Security Ruling 96-5p provides that for treating

sources, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record. SSR 96-5p, 1996 WL 374183, at *6 (emphasis added). This duty to recontact, however, only applies where the evidence is insufficient to reach a decision. *David K. v. Kijakazi*, No. 1:20cv391, 2021 WL 5755367 (N.D. Ind. Dec. 3, 2021) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)); *see also Dean v. Berryhill*, No. 1:16-cv-03340-SEB-MJD, 2017 WL 9730256 (S.D. Ind. Nov. 9, 2017) ("While an ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable, the ALJ need not solicit additional information if she simply finds the physician's opinion unsupported.").

Here, the ALJ found the limits Dr. Grewal gave on unscheduled breaks vague and unsupported. (Dkt. 17-2 at 20, R. 19). In looking at Dr. Grewal's opinion, he wrote "not sure" next to inquiries about how often Kenya would need to take an unscheduled break during an eight-hour working day and how long Kenya would have to rest before returning to work. To the extent that Dr. Grewal's opinion was vague, it appears this correlates to his statements that he was "not sure" about how often and how long Kenya would need to take unscheduled breaks. Thus, this is not a situation in which medical support is not readily discernable; rather, the ALJ correctly noted that the unscheduled breaks limitation was not supported by the evidence. (Dkt. 17-2 at 20, R. 19). Accordingly, the ALJ had no duty to recontact Dr.

Grewal. The ALJ met her minimal burden to articulate her reasoning for giving Dr. Grewal's opinion and determination little weight. Because the ALJ's evaluation is based upon substantial evidence, the Court finds no grounds for remand on this issue.

### B. ALJ's Treatment of Consultative Examiner's Opinion

Next, Plaintiff maintains that the ALJ did not properly explain the weight given consultative examiner Dr. Diane Elrod's findings. (Dkt. 28 at 20). In response, the Commissioner contends that the ALJ was entitled to give limited weight to Dr. Elrod's opinion on the bases of limited contact, lack of supportability, and her conclusory opinion regarding Kenya's disability determination which is a decision reserved for the ALJ. (Dkt. 30 at 17-22).

On May 21, 2016, Kenya was seen by Dr. Diane Elrod for a consultative examination. (Dkt. 17-7 at 101, R. 457). On review of symptoms, Dr. Elrod noted Kenya's complaints of disabling headaches, adrenal insufficiency, and fatigue. (Id.). On physical examination, Dr. Elrod noted that Kenya's bilateral visual acuity was 20/160 without corrective lenses. (Id.). She found Kenya's lung fields to be clear of auscultation and percussion; no wheezes, crackles, rales, or rhonchi. (Id. at 102, R. 458). Dr. Elrod observed that Kenya's gait was stable, within normal limits, and that Kenya did not use or medically need an assistive device. (Id. at 103, R. 459). Dr. Elrod also noted that Kenya was able to walk on her bilateral toes but not bilateral heels, could not stand on either leg alone, but could perform a partial squat maneuver without difficulty. (Dkt. 17-7 at 103-04, R. 459-60). Dr. Elrod observed

Kenya's motor strength was normal in her lower extremities, but abnormal at 3/5 in her upper extremities as noticed by decreased pushing and pulling capabilities. (Id. at 104, R. 460). Dr. Elrod's impression was that Kenya suffered from severe headaches, adrenal insufficiency, frequent urination, and was almost blind. (Dkt. 17-7 at 104, R. 460). Dr. Elrod opined that she did not see how Kenya could work with all the problems she had. (Id.). In her decision, the ALJ discounted collectively all the consultative examiners finding their opinions were only entitled to some weight because these opinions were "based on just one meeting with the claimant without the opportunity to review her entire medical record." (Dkt. 17-2 at 19, R. 18).

"An ALJ is required to consider a consultative examiner's opinion and explain the weight given to such an opinion in [her] decision." *Keith R. v. Kijakazi*, No. 20 C 4853, 2022 WL 580801, at *4 (N.D. Ill. Feb. 25, 2022) (citing *Lucio v. Barnhart*, No. 03 C 7078, 2004 WL 1433637, at *11 (N.D. Ill. June 22, 2004)). While an ALJ may discount the opinion of a consultative examiner, she must provide good reasons for doing so. *Johnny T. v. Saul*, No. 17 C 8671, 2020 WL 108442, at *5 (N.D. Ill. Jan. 9, 2020) (citing *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "Further, an ALJ can give less weight to a consultative doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight." *Sandra P. v. Kijakazi*, No. 20 C 1771, 2022 WL 488742, at *3 (N.D. Ill. Feb. 17, 2022) (citing *Hall v. Astrue*, 489 F. App'x 956, 958 (7th Cir. 2012) (internal quotations omitted)).

21

The ALJ's cursory reason for discounting all the consultative examiners, and by extension Dr. Elrod's opinion – that the opinion was "based on just one meeting with the claimant without the opportunity to review her entire medical record," (Dkt. 17-2 at 19, R. 18) – is insufficient. This statement fails to minimally explain the ALJ's reason for giving great weight to the independent medical experts, Drs. Schaffzin and Fischer, and only some weight to the state agency consulting physical examiner, Dr. Elrod. (Dkt. 17-2 at 19, R. 18).

Although "an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence," the opinion of an examining source generally receives "more weight" than the opinion of a non-examining source. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (quoting 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1): "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Rejecting the opinion of an agency's doctor that supports a disability finding is "unusual" and "can be expected to cause a reviewing court to take notice and await a good explanation." *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (citing *Beardsley*, 758 F.3d at 834). When an ALJ rejects an agency doctor's finding, a good explanation is deserved because the agency's own doctor is "unlikely ... to exaggerate an applicant's disability." *Zima v. Comm'r of Soc. Sec.*, No. 3:20-CV-486 JD, 2021 WL 4237357, at *3 (N.D. Ind. Sept. 16, 2021) (quoting *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013)).

Kenya contends that the ALJ abdicated her responsibility of weighing opinion evidence when she provided "virtually no explanation" for adopting the opinions of Dr. Schaffzin and Dr. Fischer over the opinion of consultative examiner Dr. Elrod. (Dkt. 28 at 19-20). Our review convinces us that the ALJ fell short of meeting even the Seventh Circuit's relaxed articulation standard.

Here, the ALJ failed to assess the supportability of Dr. Elrod's overall opinion with the other medical evidence. (Dkt. 17-2 at 19, R. 18). While the ALJ did note Dr. Elrod's finding regarding Kenya's poor vision, the ALJ did not address, as noted above, all of Dr. Elrod's findings. Nor does the ALJ's reasoning appear to be in accordance with the regulations. *See* 20 C.F.R. § 416.927(c) (noting the factors an ALJ is to consider when "deciding the weight [to] give to any medical opinion"). While Dr. Fischer and Dr. Schaffzin disagree with Dr. Elrod's opinion, the ALJ fails to explain why she credited the non-examiners over the agency's consultative physical examiner. The Seventh Circuit has held that "when a physician provides significant evidence that cuts against the conclusion reached by the ALJ, the ALJ must provide enough analysis to allow a re[ ]viewing court some idea of why she rejected it." *Derron P. v. Kijakazi*, No. 1:21-cv-00116-SEB-MG, 2022 WL 202841, at *4 (S.D. Ind. Jan. 21, 2022) (citing *Spicher v. Berryhill*, 898 F.3d 754, 757-589 (7th Cir. 2018) (court imposed a duty on the ALJ to explain the basis for discrediting any "observations" of the consultative examiner, concluding that the examiner's findings were not consistent with the postural limitations in the ALJ's RFC finding)).

The Commissioner attempts to justify the ALJ's finding by directing the Court to portions of the decision that summarize medical records, additional eye examinations, contradictory medical expert opinions of Drs. Shaffzin and Fischer, and the results of Plaintiff's May 2017 neurology examination. (Dkt. 30 at 17-20). The Commissioner also contends that the ALJ's decision to discount Dr. Elrod's opinion is underscored by the fact that Dr. Elrod encroached on an issue ultimately reserved for the ALJ regarding whether or not Kenya is disabled. (Id. at 22). These justifications, however, were not relied upon by the ALJ and the Court cannot consider them now. The Court's review is limited to the reason articulated in the ALJ's decision, and post-hoc rationalizations submitted by the Commissioner are impermissible. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's position with post-hoc rationale are impermissible); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."); *Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23, 2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization).

Here, the sole explanation the ALJ provides for giving consultative examiners' opinions – and by extension Dr. Elrod's opinion – some weight is that Dr. Elrod "had just one meeting with [Kenya] without the opportunity to review her

entire medical record." (Dkt. 17-2 at 19, R. 18). The ALJ failed to address Dr.

Elrod's finding or explain any apparent inconsistencies compared to other revlevant

findings. Because the ALJ failed to explain her reason for discounting Dr. Elrod's

opinion, this case requires remand for further consideration and explanation by the

ALJ.

### C. CONCLUSION

For the reasons detailed herein, this Court **REVERSES** the ALJ's decision

denying the Plaintiff's claims on redetermination and **REMANDS** this matter for

further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four) as detailed

above. Final judgment will issue accordingly.

So ORDERED.

Date: 3/2/2022

*Doris L. Pryor*

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email